708 A.2d 1219

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. HASSON DOSS, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted March 17, 199—Decided April 17, 1998

Before Judges LONG, STERN and KLEINER.

*Ivelisse Torres,* Public Defender, attorney for appellant (*Brian P. O'Reilly,* Designated Counsel, of counsel and on the brief).

*Lee A. Solomon,* Camden County Prosecutor, attorney for respondent (*Robin A. Hamett,* Assistant Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by

KLEINER, J.A.D.

Defendant, Hasson Doss, appeals from his convictions and sentences for terroristic threats and two counts of aggravated assault on a corrections officer at the Camden County Jail. The fourth-degree aggravated assault conviction was merged into the second-

degree aggravated assault conviction and defendant was sentenced to an extended twenty-year prison term with a seven-year period of parole ineligibility. Defendant received a concurrent sentence for his terroristic threats conviction. Two co-defendants, cellmates of defendant Doss while all three were incarcerated in the Camden County Jail, were also charged with a series of offenses in the same indictment.

The confrontation resulting in charges against defendant arose when Officer Donald Quinn was serving lunch to prisoners during a lockdown, a jail security measure where all inmates are confined to their cells. Because defendant and his two co-defendant cellmates were particularly disruptive, Quinn sought the assistance of his superior officer, Officer Frank Accardo. After Accardo quieted defendant and his cellmates, the jail cell was opened to allow defendant and his cellmates to receive their lunch. Accardo directed co-defendant Corey Smith to come out of the cell to receive three lunch trays. Smith followed Accardo's instructions, but, after picking up the trays, heaved them at Quinn. A physical confrontation between the three prisoners and Officers Accardo and Quinn immediately followed, during which defendant punched Quinn.

## I.

Defendant argues that the trial judge erred in failing to *sua sponte* charge third-degree aggravated assault. Defendant asserts that third-degree aggravated assault, in this case aggravated assault upon a law enforcement officer under *N.J.S.A.* 2C:12–1b(5) resulting in bodily injury, is a lesser-included offense of the second-degree aggravated assault charge, which alleged that defendant attempted to cause serious bodily injury to Officer Quinn. The issue in this point of error, then, is whether the jury should have been permitted to consider whether Officer Quinn suffered bodily injury under *N.J.S.A.* 2C:12–1b(5)(a), which would have elevated defendant's aggravated assault upon the law enforcement officer-victim to a third-degree offense, as a lesser-included of-

fense of the charge of attempt to cause serious bodily injury under *N.J.S.A.* 2C:12–1a(1).

Here, the Code permitted the inclusion of the third-degree charge of causing bodily injury under the theory that that offense differs from the second-degree offense of attempt to cause serious bodily injury "only in the respect that a less serious injury or risk of injury [to Officer Quinn] . . . suffice[d] to establish its commission." *N.J.S.A.* 2C:1–8d(3); *see State v. Sloane,* 111 *N.J.* 293, 294, 544 *A.*2d 826 (1988). In *Sloane,* the trial court refused to instruct the jury at the defendant's request on third-degree aggravated assault with a deadly weapon as a lesser-included offense of second-degree aggravated assault. The trial court had concluded that the victim's stab wound had constituted a "serious bodily injury," as defined in *N.J.S.A.* 2C:11–1b, and therefore had declined to charge the jury on an offense less than second-degree aggravated assault. *Id.* at 297, 544 *A.*2d 826. The Supreme Court in *Sloane* reversed the defendant's second-degree aggravated assault conviction because the evidence suggested that the jury could have found that the injury suffered by the victim was not "serious bodily injury" but the lesser "bodily injury," warranting a charge on third-degree aggravated assault. *Id.* at 298–99, 544 *A.*2d 826. The Court stated:

[T]he defendant here was charged with the highest degree of assault in the Code. He was on notice, and indeed it was to his advantage, that the jury be permitted to consider the lesser-included offenses of assault that require a lesser degree of injury. [The defendant] knew, because of the second count of the indictment, that a deadly weapon was involved in the charges. He did not object to the charge here; indeed, he requested the charge. Thus, he can be assumed to have been aware that the jury was able to enter a verdict of guilt on any of the appropriate lesser-included offenses. The jury should have been given that opportunity.

[*Id.* at 303–04, 544 *A.*2d 826 (footnote omitted).]

Clearly, had defendant requested the charge on the third-degree offense, the trial court, upon its required thorough examination of the record, would have found that there was "a rational basis in the evidence for finding that the defendant was not guilty of the higher offense charged but that the defendant was guilty of a lesser-included offense." *Id.* at 299, 544 *A.*2d 826 (citing *State v.*

*Crisantos,* 102 *N.J.* 265, 278, 508 *A.*2d 167 (1986)). A jury could have found that defendant did not attempt to inflict serious injury upon Officer Quinn, but that he did commit a simple assault upon Officer Quinn that resulted in bodily injury.

We therefore disagree with the State's contention that the third-degree offense is not a lesser-included offense of the second-degree offense because "the third degree offense defendant refers to deals specifically with assaults on police officers and requires proof of that particular element to sustain a conviction." "*N.J.S.A.* 2C:1–8d(1) requires that the lesser offense be established by proof of the same or less than all the '*facts,*' not 'elements,' required to establish the commission of the offense charged." *State v. Graham,* 223 *N.J.Super.* 571, 576, 539 *A.*2d 322 (App.Div.1988) (emphasis added). Further, by its silence as to whether the serious bodily injury or risk thereof required of b(1) assault must be caused to a certain kind of victim, the Legislature intended that the crime is committed regardless of the victim's status. *See ibid.* In other words, the Code is indifferent to the victim's status as an element of the second-degree offense. *N.J.S.A.* 2C:12–1b(1). Thus, where the evidence in the record shows that the victim of a b(1) assault is a law enforcement officer who suffered bodily injury, b(5)(a) assault resulting in bodily injury is a lesser-included offense under *N.J.S.A.* 2C:1–8d(1).

Nevertheless, we will not reverse defendant's convictions because the trial judge failed to issue a charge on the third-degree offense *sua sponte.* Unlike the defendant in *Sloane,* defendant here did not request the third-degree charge, and we cannot say that it would have been to his advantage to have done so. A specific jury determination that Officer Quinn suffered bodily injury would have elevated defendant's conviction on b(5)(a) assault from a fourth-degree offense to a third-degree offense. Further, the jury in this case was not forced to choose between acquitting defendant or finding him guilty of second degree aggravated assault, as was the jury in *Sloane,* because it was also

instructed on the fourth-degree aggravated assault. *See Sloane, supra,* 111 *N.J.* at 296, 544 *A.*2d 826.

Additionally, defendant may have strategically elected not to have the third-degree offense charged as a lesser-included offense. *See id.* at 303, 544 *A.*2d 826 ("Of course, defendant can in some situations tacitly elect not to have a lesser-included offense charged."); *cf. State v. Sloane,* 217 *N.J.Super.* 417, 423, 526 *A.*2d 226 (App.Div.1987) (stating that a defendant who requests or consents to a charge of a lesser-included offense "cannot complain that he was convicted of the lesser offense"), *rev'd on other grounds,* 111 *N.J.* 293, 544 *A.*2d 826 (1988). A fourth-degree aggravated assault conviction would have exposed defendant to a prison term of up to eighteen months, *N.J.S.A.* 2C:43–6a(4), while a conviction for third-degree aggravated assault would have exposed him to an extended period of incarceration of between five and ten years, *N.J.S.A.* 2C:43–7a(4). He may have believed that the jury would acquit him of the second-degree charge, thus leaving it only to determine his culpability on the fourth-degree charge with no opportunity to compromise with a guilty verdict on the lesser third-degree offense, and possible extended incarceration, if it were unable to resolve the question of defendant's guilt on the greater second-degree charge. *See id.* at 299, 544 *A.*2d 826. Under the particular facts of this case, in the absence of a request by defendant for the third-degree charge, we find no reversible error.

## II.

Defendant asserts that he was entitled to a self-defense charge, *see N.J.S.A.* 2C:3–4a, because the evidence at trial could have led a reasonable jury to conclude that he was acting in self-defense in response to the excessive use of force by Officers Quinn and Accardo.

In discussing the charge of self-defense at the charge conference, defendant's counsel discussed "the possibility of the issue of self-defense when it came to the reactions of Officer Quinn when

he interceded on behalf of Officer Accardo." The judge stated that he would reserve his decision on the issue until he heard the closing arguments of defendant's attorney.[1] In his summation, defendant's counsel never specifically argued that defendant's conduct was justified as a proper means of lawful force against Officer Quinn. Rather, he described Officer Quinn's actions in going to get Officer Accardo as aggressive and confrontational, and defendant's conduct as a response to Accardo slamming Smith to the ground. He assessed defendant's and the other co-defendants' actions as an attempt to "take a stand" against the jail's corrections officers. Further, the trial judge, on two occasions after the State's summation, inquired of defendant's counsel regarding any further requests prior to the issuance of the final charge. In neither instance did counsel request a charge of self-defense.

We find that the trial judge's jury instructions were proper and accurate, *see State v. Thompson,* 59 *N.J.* 396, 411, 283 *A.*2d 513 (1971), and that he did not commit plain error by failing to instruct the jury on self-defense because the evidence at trial did not support the defense. *See R.* 2:10–2; *State v. Abbott,* 36 *N.J.* 63, 72, 174 *A.*2d 881 (1961). There was insufficient evidence to support defendant's contention that he had a reasonable belief that the use of force against Officer Quinn was immediately necessary. *See N.J.S.A.* 2C:3–4a; *State v. Johnston,* 257 *N.J.Super.* 178, 192, 608 *A.*2d 364 (App.Div.), *certif. denied,* 130 *N.J.* 596, 617 *A.*2d 1219 (1992). The only evidence at trial relevant to the issue of self-defense was defendant's testimony. When defendant was asked why he hit Officer Quinn, he replied, "More or less I didn't know what his actions were as far as grabbing me because of the way Accardo slammed [Smith] and what happened downstairs [in an earlier incident involving the alleged mishandling of an inmate by

---

[1] We should note that the trial judge's reserving until after summations the issue of whether the evidence at trial supported the defenses of self-defense and defense of another, discussed *infra,* was inconsistent with both *Rule* 1:8–7(a) and (b).

a corrections officer recruit-in-training]. So I just, you know, I just reacted." Defendant did not allege that Officer Quinn struck him first or that the officer's restraint of defendant was excessive.

Further, there was insufficient evidence in the record to support defendant's claim that he was in danger of being harmed by either Officer Accardo or Officer Quinn, or that Officer Quinn intended to do anything more than restrain defendant to prevent him from becoming involved in the Accardo–Smith confrontation. Defendant would not have even been involved in the fight had he remained in his cell, and thus would have had no need to protect himself. *Cf. State v. Rivers,* 252 *N.J.Super.* 142, 149, 599 *A.*2d 558 (App.Div.1991) ("It is generally accepted that one who provokes or initiates an assault cannot escape criminal liability by invoking self-defense as a defense to a prosecution arising from the injury done to another."). Moreover, defendant's counsel's failure to specifically request a self-defense instruction suggests he perceived the defense was not supported by the evidence at trial. *Cf. Bradford v. Kupper Assoc.,* 283 *N.J.Super.* 556, 573–74, 662 *A.*2d 1004 (App.Div.1995) ("The absence of an objection suggests that trial counsel perceived no error or prejudice, and, in any event, prevented the trial judge from remedying any possible confusion in a timely manner.") (citations omitted), *certif. denied,* 144 *N.J.* 586, 677 *A.*2d 759 (1996).

### III.

Defendant claims that he was entitled to a jury instruction on the use of force in defense of another. *See N.J.S.A.* 2C:3–5a. Specifically, he argues: "Defendant's testimony was clear on the reasons for his actions. Accardo had used excessive force on Smith, slamming him to the ground and possibly breaking his skull. Defendant clearly entered the altercation to pull Accardo off [co-defendant] Smith."

Defendant testified that he believed that his intervention was necessary for Smith's protection. He testified that although Officer Accardo had Smith under control, he picked Smith up off his

feet and slammed him to the ground. It appeared to defendant that Accardo had broken Smith's face, and that Accardo and Quinn were taking advantage of Smith. Defendant then told Accardo to get off of Smith, and tried to get out of his cell to pull Accardo off of Smith. As Officer Quinn attempted to prevent defendant from becoming involved in the incident, defendant punched Officer Quinn, he said, because he just "reacted."

Although, like the issue of self-defense, the trial judge and defendant's counsel discussed, to a limited extent, the applicability of the defense of protection of another before summations,[2] during his summation defendant's counsel never specifically argued that defendant's conduct was justified as a proper means of lawful force against Officer Quinn to protect co-defendant Smith. Defendant's counsel failed to put forth this argument despite two inquiries concerning the final instructions by the judge after the State's summation.

We reject defendant's argument and conclude that the record was devoid of "a rational basis upon which the jury could find that defendant acted in the defense of another." *State v. Martinez,* 229 *N.J.Super.* 593, 600, 552 *A.2d* 232 (App.Div.1989) (citations omitted). Although defendant claims he left his cell to protect Smith from Accardo, defendant did not hit Accardo. Moreover, although defendant testified that he believed that Smith may have had his face "broken" by Accardo and that Accardo and Quinn were taking advantage of Smith, no evidence was produced at trial to support the reasonableness of his claim of an excessive beating of Smith. Thus, there was insufficient evidence to support defendant's contention that his belief that hitting Officer Quinn was necessary to protect Smith from Accardo was reasonable under the circumstances. *N.J.S.A.* 2C:3–5a(3); *State v. Bryant,* 288 *N.J.Super.* 27, 35, 671 *A.2d* 1058 (App.Div.), *certif. denied,* 144 *N.J.* 589, 677 *A.2d* 761 (1996); *State v. Holmes,* 208 *N.J.Super.* 480, 485–86, 506 *A.2d* 366 (App.Div.1986).

---

[2] *See supra* note 1.

There also was insufficient evidence supporting Smith's right to use force to protect himself, *see N.J.S.A.* 2C:3–5a(2), especially considering the fact that there was no evidence regarding any injuries suffered by Smith, despite defendant's claim that his face may have been "broken" as a result of Accardo slamming him to the floor. Moreover, like the issue of self-defense, defendant's counsel's failure to specifically request a defense of others instruction suggests he perceived the defense was not supported by the evidence at trial. *Cf. Bradford, supra,* 283 *N.J.Super.* at 573–74, 662 *A.*2d 1004. The trial judge's failure to charge defense of another therefore was not plain error. *See R.* 2:10–2.

## IV.

Despite his failure to raise an objection below, defendant claims that the trial court committed plain error by failing to instruct the jury that certain charges against the two co-defendants had been dismissed upon their motions for judgment of acquittal at the close of the State's case, and by failing to inform the jury that there was insufficient evidence to support the charge against defendant of causing serious bodily injury to Quinn.

Defendant's argument is completely without merit. The trial judge was entitled to omit from the jury charge offenses no longer at issue in the trial to decrease the possibility of jury confusion, and his decision to do so was not "clearly capable of producing an unjust result." *R.* 2:10–2; *see R.* 2:11–3(e)(2).

## V.

Defendant contends that certain comments made by the prosecutor in her opening and closing statements were improper. He also cites as improper the manner in which the prosecutor cross-examined him. Defendant's arguments are completely without merit. *See R.* 2:11–3(e)(2). The prosecutor's comments during trial were not objected to by defense counsel and did not deprive defendant of a fair trial. *See State v. Zola,* 112 *N.J.* 384, 426, 548 *A.*2d 1022 (1988); *State v. Darrian,* 255 *N.J.Super.* 435,

455, 605 *A.*2d 716 (App.Div.), *certif. denied,* 130 *N.J.* 13, 611 *A.*2d 651 (1992).

## VI.

■ Defendant asserts that the trial judge erred in failing to instruct the jury on the manner in which it could consider certain "other crimes evidence." According to defendant, the court's failure to issue a charge consistent with the provisions of *N.J.R.E.* 404(b) deprived him of a fair trial because the jury was left to "speculate" about defendant's prior convictions and incarceration. This argument, too, is completely without merit. *See R.* 2:11–3(e)(2). The evidence of defendant's other convictions was not admitted to prove his criminal disposition or even for any of the permissible purposes set out in *N.J.R.E.* 404(b); *see State v. Nance,* 148 *N.J.* 376, 386–92, 689 *A.*2d 1351 (1997), but rather was offered by the *defense* as background to explain defendant's incarceration. In fact, the State abstained from cross-examining him regarding those crimes. Further, the judge instructed the jury that it was to draw no adverse inference from defendant's incarceration.

## VII.

■ We reject defendant's claim that his "sentence was excessive and not in accordance with the sentencing guidelines." First, deterrence is clearly a permissible aggravating factor to consider in imposing sentence. *N.J.S.A.* 2C:44–1(a)(9); *State v. Martin,* 235 *N.J.Super.* 47, 59–60, 561 *A.*2d 631 (App.Div.), *certif. denied,* 117 *N.J.* 669, 569 *A.*2d 1359 (1989). This is especially true where, as here, defendant was convicted of attempting to cause serious bodily injury to a corrections officer in the county jail where he was incarcerated. Second, no double-counting occurred because the victim's status as a law enforcement officer was only considered once for sentencing purposes after defendant's fourth-degree aggravated assault conviction was merged into the second-degree conviction. Third, the judge did not abuse his discretion in

refusing to find any mitigating factors. *State v. Davis*, 175 *N.J.Super.* 130, 142, 417 *A.*2d 1075 (App.Div.1980). Last, the sentence imposed is consistent with *State v. Roth*, 95 *N.J.* 334, 363–65, 471 *A.*2d 370 (1984), and *State v. Ghertler*, 114 *N.J.* 383, 394, 555 *A.*2d 553 (1989).

■ We are convinced, however, that the trial court should have merged defendant's conviction for terroristic threats into his aggravated assault conviction. *See State v. Davis*, 68 *N.J.* 69, 81, 342 *A.*2d 841 (1975). We therefore vacate the concurrent sentence imposed upon defendant for terroristic threats. The trial court shall revise the judgment of conviction to reflect this change.

Affirmed in part, reversed in part.